UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

IN RE: RALPH A. BALCEROWSKI,     Case No. 06-21695

Debtor.     Chapter 13

**ORDER SUSTAINING CHAPTER 13 TRUSTEE'S OBJECTION
TO CONFIRMATION OF PLAN**

This case involves an issue new to this Court–the appropriate way to calculate the tax expense for the purpose of determining whether a Chapter 13 debtor meets the requirement that he devote "all of [his] projected disposable income" to the plan under § 1325(b)(1)(B) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). The Court concludes that the appropriate way to calculate the tax expense for this purpose is for the debtor to estimate, and subtract from his income, the actual tax he will incur, not the amount he has withheld from his wages. The Court further concludes that the debtor should calculate this actual tax based on his income at the time he filed his petition, and not solely upon his historical, "current monthly income" income figure.

I.     **Facts**

The debtor filed his Chapter 13 petition on April 13, 2006; Title 11 as amended by BAPCPA is the governing law. The forms the debtor filed on April 13 show that his income–calculated as BAPCPA required that it be calculated–exceeded the applicable median family income for a family of his size in

1

his state of residence. The debtor is, therefore, what has come to be known in the post-BAPCPA world as an "above-median income debtor."

The debtor also filed his proposed Chapter 13 plan on April 13. The plan proposed to pay a dividend of 4% to the unsecured creditors.

A. The Trustee's Objection[1]

The Chapter 13 trustee filed an objection to the plan, arguing that it did not devote all of the debtor's projected disposable income to paying his creditors. In particular, the trustee argued that the plan proposed to pay a dividend of only 4% to the unsecured creditors (a pro rata share of $845.15 on a total, general, unsecured debt of $21,736.29). This relatively small percentage came, in part, from the debtor's calculation on new Form B22C indicating that, after he subtracted his monthly expenses, he had a negative $3.58 in disposable monthly income each month to devote to paying creditors.

But the debtor had reached that negative $3.58 amount, the trustee argued, by subtracting as his average monthly tax expense (one the expenses Form B22C allows the debtor to subtract from his income) the amount of $1,013.33. The trustee argued that, contrary to the instruction on Form B22C that the debtor subtract the tax expense that he would *actual[ly] incur*," the debtor had subtracted the amount

---

[1] The trustee filed an original objection, then filed a brief after the hearing on the objection. The debtor filed a brief prior to the hearing, and another brief after the hearing. In this decision, the Court conflates the trustee's arguments from the objection and the post-hearing brief into a single recitation of the trustee's arguments, and the arguments from the debtor's two briefs into a single recitation of the debtor's arguments.

2

of money that had been *withheld* from his wages. (Emphasis added) The trustee argued that, for this debtor, the withholding amount was higher than the amount that the debtor actually would end up owing based on his income and the 2006 tax tables, deductions and exemptions, and thus that the debtor's Form B22C calculations showed an artificially *low* amount of monthly disposable income.[2]

In support of this contention, the trustee pointed out that § 1325(b)(2) defines disposable income as "current monthly income . . . less amounts reasonably necessary *to be expended* . . . ." The words "to be expended," the trustee argued, are future-looking. Amounts "to be expended" are amounts that a person expects to spend in the future. Thus, argued the trustee, the words of the statute itself required the trustee to subtract the actual tax amount, because that is the amount that the debtor actually would spend for tax obligations.

The trustee noted that in § 707(b)(2)(A)(ii)(I)–that section of the BAPCPA

---

[2] The trustee estimated what the debtor's actual tax would be as follows: she looked at the debtor's income for the six months prior to the month in which he filed his petition, annualized that income, then used the 2006 tax tables, deductions and exemptions to calculate what she argued was the amount of tax the debtor actually would owe on that income. The trustee came up with a tax expense of $739, rather than the $1,013.33 the debtor subtracted. The difference between the trustee's tax expense number and the debtor's tax expense number was approximately $275. Accordingly, the trustee concluded that had the debtor subtracted on his Form B22C the tax as she calculated it, rather than his withholding amount, the resulting "Monthly Disposable Income Under § 1325(b)(2)" on line 58 of the Form B22C would have been around $270, rather than the negative $3.58 the debtor showed on the form. The trustee maintained, therefore, that the debtor had $16,245 ($270 multiplied by 12) to devote to paying his creditors–an almost 75% dividend, rather than the 4% dividend the debtor proposed in his plan.

3

amendments that details what expenses above-median income debtors can and cannot subtract from current monthly income to determine disposable income–Congress specified that above-median income debtors could subtract their "*actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service . . . ." The trustee then referred to the Internal Revenue Manual, indicating that the IRS deemed taxes "necessary" if they are "for current federal, FICA, Medicare, state and local taxes." Internal Revenue Manual 5.15.1, Financial Analysis Handbook at 5.15.1.10, Other expenses (05-01-2004).

The trustee also cited the recently-decided case of In re: Renicker, 342 B.R. 304 (Bankr. W.D. Mo. 2006). In Renicker, the debtors deducted from their historical income an expense for a house. The end result was that, while the debtors had a combined monthly income of $6,085, their Form B22C indicated that they had only $20.88 a month to contribute to the plan as disposable income. The trustee objected, noting that the house expense the debtors deducted was for a home that they no longer owned. In other words, they no longer had the expense which they had deducted. Id. at 306. Accordingly, the trustee argued, the amount that they had been devoting to paying that expense should have been available to pay creditors.

The Renicker court agreed with the trustee, and found that "the plain language of § 1325(b)(2) unambiguously indicates that prospective–not

4

historical–expenses are to be used to calculate disposable income." Id. at 309.  In reaching this conclusion, the Renicker court pointed to the same language relied upon by the trustee in this case–the language in § 1325(b)(2) defining disposable income as current monthly income "less amounts reasonably *'to be expended . . .* for the maintenance or support of the debtor or a dependent of the debtor." Id., quoting § 1325(b)(2) (emphasis added by court).

The trustee in this case conceded that requiring above-median income debtors to deduct their actual tax expenses from their historical income might, in some cases, yield "harsh results" for debtors like this one, whose filing date income is lower than their historical income.  But the trustee noted that for above-median income debtors whose incomes *increase* at the filing date, the result would be generous–the debtor would "reap the benefits of being able to list a lower current monthly income on Form B22C and also list a higher tax expense based on his higher actual income." Trustee's brief at page 5.

The trustee also argued that a line of cases has developed since the implementation of BAPCPA which holds that, in determining how much "projected disposable income" a debtor has to commit to a plan, one must look at both the historical, "current monthly income" on Form B22C and at the actual, current income listed on Schedule I.  *See, e.g.*, In re: Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006); In re: Jass, 340 B.R. 411 (Bankr. D. Utah 2006); In re: Kibbe, 342 B.R. 411 (Bankr. D. N.H. 2006); In re: McGuire, 342 B.R. 608 (Bankr. W.D. Mo. 2006); In

5

re: Fuller, 346 B.R. 472 (Bankr. S.D. Ill. 2006). If this is true, the trustee maintained, then using the actual tax expense would not unfairly prejudice or benefit debtors who have changes in their financial circumstances around the time of filing. The trustee noted, however, that in this case the debtor had not argued that the income from which the tax expenses are deducted should be Schedule I income.

### B. The Debtor's Response to the Trustee's Objection

The debtor argued that his plan should be confirmed without change. He maintained that, by demanding that the debtor subtract his actual taxes, rather than the taxes withheld during the six months preceding the month in which he filed his bankruptcy, the trustee was ignoring 11 U.S.C. 1325(b)(2)'s definition of "disposable income." The crux of the debtor's argument was as follows: In requiring a debtor to devote all of his "projected disposable income" to the plan, § 1325(b)(2) defines "disposable income" as "current monthly income." "Current monthly income," according to § 101(10)(A) of BAPCPA, is "the average monthly income . . . that the debtor receives . . . derived during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . ." Current monthly income, then, is an historical figure, reflecting the debtor's average monthly income from the six months *before* he filed his petition.

The debtor argued that forcing him to subtract from that *historical* income

6

figure the *actual* taxes he will pay on the income he receives at the time he files the petition would create an artificially high disposable income for him and for any other above-median income debtors whose financial situations are worse at the time they file their petitions than they were in the preceding six months. In such a situation, the debtor argued, feasibility would be doomed from the inception of the case, because the debtor would not have the practical wherewithal to pay the higher disposable income amount.

At first blush, this argument did not seem to address the trustee's objection. The trustee objected to the debtor subtracting as his tax expense the amount he had withheld from his paycheck, rather than his actual tax expense. In other words, the trustee argued that the debtor obtained his tax expense figure from the wrong source. In response, the debtor made a *temporal* argument–that it is not fair to require certain debtors to subtract their *current* tax expense from their *historical* income. The debtor seemed to be arguing less about the source of his expense figures, and more about what time period the debtor should use to calculate those expense figures.

The debtor's statutory construction argument also was difficult to follow. The debtor argued that the words "reasonably necessary *to be expended*" in § 1325(b)(3) do not mean "amounts the debtor will have to spend in the future." Rather, he argued, those words were modifiers for the words that followed. The debtor noted that the entire sentence in § 1325(b)(3) reads, "Amounts reasonably

7

necessary to be expended under paragraph (2) shall be determined in accordance with [§ 707(b)(2)(A) and (B) . . . ." The debtor posited that "reasonably necessary to be expended" modifies "paragraph (2), such that *'to be expended'* means versus a particular [current monthly income] at one theoretical moment in time, the time of filing." Debtor's Second Brief Supporting Confirmation of Chapter 13 Plan at p. 3. While it is not entirely clear, it appears that the debtor was arguing that the phrase "to be expended" referred to *categories* of expenses, rather than to the time period in which they are determined.

The debtor further opined that the trustee's interpretation was at odds with the intention of the drafters. Quoting a house report on BAPCPA, the debtor argued that Congress meant for the amendments to "ensure that debtors repay creditors the maximum <u>*they can afford*</u>." <u>Id.</u> at p. 4, quoting House Report 1.0-031, Part 1, Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (emphasis added). Using falsely-inflated disposable income numbers, the debtor asserted, did not ensure that debtors paid creditors what they truly could afford.

Finally, in the last paragraphs of his second brief, the debtor directly addressed the crux of the trustee's objection. He argued that the trustee was wrong when she estimated what the debtor's actual tax was likely to be, because she estimated only the debtor's *federal* tax. The debtor responded that when one estimated his federal, state, Social Security and Medicare taxes and contributions, he was required to withhold from his paycheck a minimum of $1,134.92 per month,

8

not the $739 per month calculated by the trustee.

II.  **Jurisdiction**

The issue in this case involves a core proceeding under 28 U.S.C. § 157(b)(2)(A), and this Court has jurisdiction under 28 U.S.C. § 1334(b).

III. **Discussion**

Section 1325(b), as amended by BAPCPA holds, that "if the trustee or the holder of an allowed unsecured claim" objects to the confirmation of a debtor's Chapter 13 plan, the court is prohibited from ordering confirmation of that plan unless either of two conditions is met. First, if "the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim," the court may confirm the plan. 11 U.S.C. § 1325(b)(1)(A). This section is not applicable here. Second, and applicable in this case, if "the plan provides that all of the debtor's *projected disposable income* to be received [over the life of the plan] . . . will be applied to make payments under the plan," the court may confirm the plan. 11 U.S.C. § 1325(b)(1)(B).

In the current matter, the trustee objected to confirmation of the debtor's plan on the ground that the plan did not meet the requirement of § 1325(b)(1)(B) that all of this debtor's projected disposable income be committed to the plan. Specifically, the trustee objected that the debtor claimed an inappropriately high tax expense, making it appear that he had less disposable income to devote to paying his creditors than he actually had.

9

If the debtor had filed the current case before the BAPCPA amendments took effect, the trustee's § 1325 argument would have revolved around how much income the debtor showed on his Schedule I and the amount of his expenses on Schedule J–in other words, it would have focused on his income and expenses at the time he filed his petition. The trustee, in determining whether the debtor was devoting all of his disposable income to the plan, would have subtracted from the debtor's Schedule I income the tax expense reflected on his Schedule J, and compared the resulting amount with the amount the debtor's plan proposed to pay to the unsecured creditors.

This is a BAPCPA case, however, and this debtor falls into the newly-created category of above-median income debtors. That means that the calculation of how much "disposable income" he has to devote to a plan under § 1325(b)(1)(B) now is based, to a large extent, on a statutory formula, rather than on his current, actual financial circumstances.

This statutory formula has become familiar to bankruptcy practitioners. "Disposable income," according to § 1325(b)(2), is "current monthly income" minus "amounts reasonably necessary to be expended . . . ." The statute defines "current monthly income" as "the average monthly income from all sources that the debtor receives . . . during the 6-month period ending on . . . the last day of the calendar month immediately preceding the date of the commencement of the case . . . ." 11 U.S.C. § 101(10A). The statute defines "amounts reasonably necessary to be

expended" in § 707(b)(2)(A) and (B).

> A. The Actual Tax the Debtor Will Owe is the Appropriate Amount to Subtract on Form B22C.
>
> 1. *The Nature of Withholding Tax*

Taxing authorities have created a system whereby wage-earners "withhold" certain amounts from their pay each pay period as a way to escrow anticipated tax payments. As the withholding system is set up, the taxpayer decides the exact amount to be withheld–taxpayers must estimate how much they think they will end up owing on their taxes in order to figure out how much to withhold. It is not uncommon for wage-earners to "over-withhold"–that is, to escrow more from their paychecks than what they are likely to owe.

There are various reasons for taxpayers to do this–some do it out of a fear that they will owe more than they have estimated. Some do not understand how to calculate withholding, and over-withhold by accident. Still others do it as a sort of forced savings mechanism–the money comes out of their paychecks each pay period, and then they receive a tax refund the following year which they can choose to save, invest or spend. In any event, the amount the taxpayer chooses to withhold is subject to manipulation by the taxpayer, and may or may not resemble the tax actually incurred.

It follows, then, that the amount a taxpayer chooses to withhold from his paycheck is not necessarily the actual tax expense he will incur. In fact, the taxpayer gets back from the taxing authorities any amount he has over-withheld in

11

the form of a tax refund. The amount that the taxpayer gets back is *not*, therefore, an amount "reasonably necessary to be expended."[3]

2. *The Expense Allowed Under §§ 1325 and 707*

Section 1325 allows an above-median income debtor to subtract from his current monthly income only those amounts that are "reasonably necessary to be expended," and directs one to § 707(b)(2)(A) and (B) for a definition of what constitutes those amounts. Section 707(b) allows the above-median income debtor to subtract "the debtor's *actual* monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service . . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). The Internal Revenue Service Manual, as the trustee points out, includes taxes in its "Other Expenses" category. The Financial Analysis Handbook of the Manual–section 5.15.1–indicates that taxes are necessary if they are "current federal, FICA, Medicare, state and local taxes." Internal Revenue Manual 5.15.1, Financial Analysis Handbook at 5.15.1.10, Other expenses (05-01-2004) Thus, the actual, current amount the debtor owes for those types of taxes is the "amount[] reasonably necessary to be expended," and BAPCPA allows an above-median income debtor to reduce his "current monthly income" by the

---

[3] Supporting this conclusion are pre-BAPCPA cases which hold that tax refunds constitute disposable income. *See, e.g.*, In re: Freeman, 86 F.3d 478, 481 (6th Cir. 1996) (tax refund for debtor who had specifically identified tax refunds going to plan, and had not argued that the funds were reasonably necessary to be expended for the "maintenance and support" of the debtor, qualified as "projected disposable income" under § 1325); In re: Cochran, 141 B.R. 270 (Bankr. M.D. Georgia, 1992) (tax refund is, by definition, repayment of over-paid taxes).

12

amount he must pay for those enumerated tax obligations.

Because the amount a debtor has withheld from his paycheck does not necessarily equal the amount "reasonably necessary to be expended" for taxes, and is not necessarily the amount he actually incurs for tax obligations, the Court concludes that a debtor cannot use his withholding amount as the tax expense amount he subtracts from his income on Form B22C.

The Court did not understand the debtor's interpretation of the phrase "to be expended." In the Court's view, it is difficult to read those words as doing anything other than referring to a period in time. But the Court's conclusion that a debtor cannot use the amounts withheld from his paycheck in determining his tax expense does not turn on the phrase "to be expended." Rather, it turns on the very reason that Chapter 13 debtors are required to calculate their disposable income. The purpose of calculating disposable income is to ensure that any dollars a debtor does not need to support himself and his dependents are devoted to paying his creditors. The dollars that a debtor has withheld from his paycheck over and above the amount he owes the taxing authorities are not tax expense dollars. For this reason, the debtor cannot include those dollars as a "tax expense" that he can deduct to reduce his disposable income. Instead, the debtor must subtract from his income the average monthly tax expense that he "actually incur[s]"–just as he is directed to do in the instructions for Line 30 of Form B22C.

13

### 3. *The Calculation of Taxes "Actually Incurred"*

Admittedly, accurately determining the amount of tax that a debtor "actually incur[s]" is problematic. If a debtor files for Chapter 13 relief on December 31, he is more likely to estimate accurately the amount of tax he will owe than if he files his petition on February 20. The petitioner who files on February 20 may not be able accurately to predict the future. He does not know if he will be laid off or fired, he does not know if he will get a second job, he does not know if he will get a raise, he does not know how many hours of overtime he will work. Neither does he know whether the tax tables and regulations will change over the course of the year.

The trustee, in her calculations of the debtor's disposable income, used the deductions, credits and other relevant factors in the tax tables in effect at the time she filed her objection. The debtor responded that these tables were subject to change over the course of a year, and he is correct. The Court, however, holds only that the debtor must subtract on line 30, as best he can estimate it, his actual tax expense, and leaves it to the parties to determine how best to make that estimate.[4]

---

[4] The trustee argued in her brief that it is especially critical for above-median income debtors to subtract their actual tax expenses because of the way the trustee's office plans to handle tax refunds. In the past, the policy of the Chapter 13 trustees in this district has been to require debtors to turn over to the trustee one-half of any tax refund they receive. The trustee indicates that post-BAPCPA, her office has changed that policy to some extent, and will no longer demand one-half of an above-median income debtor's tax refund. Some debtors' counsel in other cases have argued that, if implemented, this new policy would unfairly discriminate against below-median income debtors. The validity or appropriateness of the trustee's stated new policy is not before the Court at this time, and the Court need not pass judgment on that policy to reach a decision in this case.

The debtor also pointed out that when the trustee figured his tax expense for the purposes of determining disposable income, she estimated only his federal income tax expense. He argued that, had she also estimated state tax expense, Social Security taxes, and Medicare taxes, the result would have been less disposable income than the amount the trustee calculated in her objection.

In this regard, the debtor's complaint is well-founded. Line 30 of Form B22C directs the debtor to subtract his average monthly expense "for all federal, state and local taxes, *other than real estate and sales taxes, such as income taxes, self employment taxes, social security taxes, and Medicare taxes*." The form clearly instructs debtors to subtract on line 30 the average of *all* of those forms of tax–state, federal, local, self-employment, Social Security and Medicare. And, as discussed above, the IRS manual classifies all of those forms of tax as necessary expenses. Thus, when a debtor subtracts his "actual" taxes on line 30, he should subtract the average of all of those types of tax.

In conclusion, the Court holds that an above-median income debtor must subtract on line 30 of Form B22C, to the best that he is able to estimate it, the average monthly amount of all federal, state, local, self-employment, Social Security and Medicare that he actually will incur–not the amounts that he has withheld from his paycheck.

B. <u>The Debtor's Actual Tax Should Be Calculated Using His Schedule I Income, and Not Just His Six-Month, "Current Monthly Income" Income.</u>

The debtor voices a legitimate concern that if he is required to subtract his *actual* taxes from his *historical* "current monthly income" amount, the result –in his case–will be an artificially high amount of disposable income, because his historical income (and thus the tax expense associated with it) was much higher than his income (and the tax expense associated with it) at the time he filed his petition. The opposite, of course, would also be true–for a debtor whose income was *lower* in the six months before he filed than it was at the time he filed his petition, subtracting actual taxes from historical, "current monthly" income would yield an artificially *low* amount of disposable income. The debtor is, of course, correct (as the trustee concedes), but other courts have dealt with this issue in other contexts, and have achieved a fair and consistent resolution of the disconnect created by the statute.

BAPCPA defines "disposable income" as "current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments . . .) less amounts reasonably necessary to be expended for the maintenance and support of the debtor or a dependent of the debtor, or for a domestic support obligation . . . ." The statute defines this new term, "current monthly income," as follows:

> . . . the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income,

16

> derived during the 6-month period ending on (i) the last day of the calendar month immediately preceding the date of the commencement of the case . . . .

11 U.S.C. § 101(10A).

As writers and commentators have noted, this "current monthly income" definition of disposable income is neither current (as it deals with the income the debtor received in the six months *prior* to the month in which he filed bankruptcy) nor monthly (as it is an average of six months) nor income (as the debtor may no longer be receiving it). Rather than directing parties to look at Schedule I–which contains the debtor's income information as of the date he filed his petition–BAPCPA now directs parties to look at the debtor's average income for the six-month period preceding the bankruptcy.

This directive works well if a debtor has the same income at the time he files his bankruptcy petition as he had during the six months preceding the month in which he filed. But many debtors experience changes in their financial circumstances around the time they file for bankruptcy–in some cases, the debtor's income preceding the bankruptcy will be higher than it is at the time he files (as is the case here). In other cases, the debtor's income may be higher after he files. If the purpose of the disposable income calculations in the Chapter 13 context is to ferret out exactly how much money a debtor has available to pay creditors–or, as Congress and the debtor in this case put it, to determine what debtors truly can afford to pay their creditors–then looking only to the income the debtor made in the

17

six months before he files does not further that objective.

In In re: Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006), the bankruptcy court for the Northern District of Texas attempted to harmonize the income standards of § 1322(a)(1) (requiring Chapter 13 plans to "provide for the submission of all or such portion of *future* earnings or other *future* income fo the debtor to the supervision and control of the trustee as is necessary for the execution of the plan") with the definition of "disposable income" in § 1325(b)(1)(B) and (2). That court concluded that "current monthly income" may be a starting point for determining disposable income, but that parties could not rely solely on that figure to calculate the true amount available to fund a plan. The Hardacre court found that the debtor's income as of the date he files his plan was the more relevant figure for calculating disposable income–not his historical income. Id. at 723.

Other judges have agreed with the Hardacre court's conclusion–including this one. See In re: Fuller, 346 B.R. 472 (Bankr. S.D. Ill. 2006).[5] Accordingly, the Court concludes that, while § 1325 and Form B22C require the debtor to subtract his *actual* tax expense from his *historical* income on Form B22C, the trustee cannot rely solely upon the resulting monthly disposable income figure on line 58 of Form B22C to determine whether the debtor's plan complies with the dictates of § 1325. Rather, as required by cases such as Hardacre and Fuller, the trustee also must

---

[5] The undersigned judge sits primarily in this district (the Eastern District of Wisconsin), but also sits by designation in the Southern District of Illinois. The undersigned issued In re: Fuller while sitting in the Southern District of Illinois.

18

look at the amount that results when one subtracts the debtor's actual tax expense (and other expenses) from his Schedule I income.

IV. **Conclusion**

For the reasons discussed above, the Court SUSTAINS the trustee's objection to confirmation of the debtor's Chapter 13 plan. The Court will allow the debtor 30 days from the date of this Order to amend the plan to reflect the disposable income that results from subtracting his actual tax expenses from his Schedule I income.

SO ORDERED this 17th day of October, 2006.

_____
HON. PAMELA PEPPER
United States Bankruptcy Court

Cc: Ralph A. Balcerowski          Michael J. Watton
    Debtor                         Counsel for the debtor

    Mary B. Grossman               Rebecca Rogers Garcia
    Chapter 13 Standing Trustee    Office of the Chapter 13 Trustee

    Office of the U.S. Trustee